FILED by ep D.C.
JUN 29 2000
CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. · MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO. 99-6735-CIV-JORDAN

CATHERINE SCHRECK )
Plaintiff )
)
vs. )
)
RELIANCE STANDARD LIFE )
INSURANCE )
Defendant )
)

**CLOSED CIVIL CASE**

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, DISMISSING CASE WITHOUT PREJUDICE, AND REMANDING CASE TO INSURANCE ADMINISTRATOR**

Catherine Schreck sues Reliance Standard Life Insurance under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* Ms. Schreck claims that Reliance Standard unlawfully denied her benefits under her husband's life insurance policy. *See* Complaint [D.E. 1] (June 14, 1999).

**Facts**

On August 6, 1998, Kenneth Schreck, Ms. Schreck's husband, fell out of a moving vehicle and died. According to a police report based on interviews with those involved, Ms. Schreck, her brother, her sister-in-law, and her husband were traveling in a car, arguing about whether to go to a certain bar. *See* Police Report [D.E. 24, Exhibit 6] (Aug. 6, 1998). Apparently, Mr. Schreck did not want to go to the bar and said that, if the others insisted on going, he was going to get out of the car. As Ms. Schreck, who was driving, was completing a u-turn, Mr. Schreck opened the rear door and "fell out" of the car, striking his head. Although the report indicated that Mr. Schreck sustained only a laceration to the back of his head, he later died at the hospital. Mr. Schreck's brother-in-law told the police that Mr. Schreck had been drinking and was intoxicated.

Two days later, a medical examiner conducted an autopsy and found that Mr. Schreck had died from blunt head trauma and brain hemorrhage. In the opinion section of the autopsy report, the medical examiner wrote the following:

57

> Kenneth Schreck, a 42 year-old white male died as a result of blunt head trauma sustained following a leap from a moving vehicle. Although the deceased effected his own egress from the vehicle, it is difficult to know his specific motivations or intentions. There is no evidence of suicidal intent, however, neither does it appear thoroughly accidental.

Broward County Medical Examiner Report [D.E. 24, Exhibit C] (Aug. 8, 1998). The medical examiner concluded that the manner of death was "undetermined." *See id.*

Ms. Schreck subsequently submitted a claim for accidental death benefits with Reliance Standard under her husband's life insurance policy. Under the policy, Reliance Standard will pay the benefit amount if, due to injury, an insured suffers a loss of life within 365 days from the date of the accident. *See* Insurance Policy [D.E. 24, Exhibit A] (Feb. 1, 1998). The policy defines injury as "accidental bodily injury to an Insured which is caused directly and independently of all other causes by accidental means and which occurs while the Insure[d]'s coverage under this Policy is in force." *Id.* at 2.0. The policy excludes from coverage any loss "caused by suicide or intentionally self-inflicted injuries." *Id.* at 15.0.

Reliance Standard denied Ms. Schreck's claim because it determined that Mr. Schreck's injury was not accidental and fell within the exclusion for self-inflicted injuries. *See* Letter from Antoinette D. Penn, Senior Claims Examiner to Catherine M. Schreck ("Denial Letter") [D.E. 24, Exhibit D] (Nov. 6, 1998). Reliance Standard relied on the medical examiner's report, the police report, and a copy of the death certificate listing the cause and manner of death in making its determination. *See id.* Although the police report stated only that Mr. Schreck "fell out" of the car, Reliance Standard said in its denial letter that, according to the report, he "either stepped out or fell out" of the car. *Id.* Reliance Standard did not contact the police officer or the witnesses, nor did it conduct any other additional investigation as to the circumstances of Mr. Schreck's death.

Based on the documents it obtained, Reliance Standard concluded that Mr. Schreck "died of a deliberate and intentional act." *Id.*

> Mr. Schreck should have known that serious bodily injury or death was a probable consequence of or was substantially likely to have occurred as result of opening a car door or stepping out of a moving vehicle. As such, we have concluded that this loss was not accidental, Mr. Schreck's death was not caused directly and independently of all other causes by accidental means as defined above. Moreover, this policy does not provide benefits for losses caused by intentionally self-inflicted injury.

*Id.* at 2. The denial letter informed Ms. Schreck that under ERISA she was entitled to review of her claim upon written request and that she was free to include any documentation supporting her claim in her appeal request. *See id.* Ms. Schreck's attorney sent Reliance Standard a letter objecting to the denial, but did not submit any additional documents to support her claim. *See* Letter from Benjamin S. Kennedy to Antoinette D. Penn [D.E. 24, Exhibit E] (Dec. 14, 1998). In that letter, Ms. Schreck's attorney suggested that the car was stopped when Mr. Schreck alighted and hit his head and that he died from swelling of the brain after arriving at the hospital. *See id.* Reliance Standard affirmed its decision.

**Summary Judgment Standard**

Reliance Standard moves for summary judgment on Ms. Schreck's ERISA claim. *See* Defendant's Motion for Summary Judgment [D.E. 22] (Nov. 30, 1999). Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that might affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where the non-moving party fails to prove an essential element of its case for which it has the burden of proof at trial, summary judgment is warranted. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Hilburn v. Murata Electronics North America, Inc.*, 181 F.3d 1220, 1225 (11th Cir. 1999). Thus, the question is whether, considering the evidence in the light most favorable to Ms. Schreck, the non-moving party, there is evidence on which a jury could reasonably find a verdict in her favor. *See Celotex*, 477 U.S. at 322–23; *Hilburn*, 181 F.3d at 1225; *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

**The ERISA Claim**

The parties dispute what standard of review applies in reviewing Reliance Standard's decision to deny Ms. Schreck benefits under the insurance policy. Ms. Schreck argues that the decision must be reviewed *de novo*, while Reliance Standard proposes a heightened arbitrary and capricious standard.

ERISA does not provide a standard to review the decision of an insurance plan administrator. *See Buckley v. Metropolitan Life*, 115 F.3d 936, 938 (11th Cir. 1997). The Supreme Court, however, has held that courts must review benefits determinations *de novo* unless the insurance policy grants

the administrator discretion to make a benefits determination. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Where an administrator has discretion and has no conflict of interest, courts review the administrator's interpretation of the terms of the policy as well as any factual findings under an arbitrary and capricious standard. *See Buckley*, 115 F.3d at 938; *Paramore v. Delta Airlines, Inc.*, 129 F.3d 1446, 1451 (11th Cir. 1997). But, a heightened arbitrary and capricious standard applies where the administrator suffers a conflict of interest — specifically, where the insurance company administers the plan and pays the beneficiaries from its own assets. *See Buckley*, 115 F.3d 939 (citing *Brown v. Blue Cross & Blue Shield of Ala., Inc.*, 898 F.2d 1556, 1564–65 (11th Cir. 1990)); *Florence Nightingale Nursing Serv., Inc.*, 41 F.3d 1476, 1481 (11th Cir. 1995). *See also Luton v. Prudential Ins. Co. of Am.*, No. 98-8504-CIV-GOLD, 2000 WL 310562, at *7 (S.D. Fla. March 23, 2000); *Brown v. BellSouth Telecommunications, Inc.*, 73 F. Supp. 2d 1308, 1319 (M.D. Ala. 1999).

In this case, Reliance Standard's decision must be reviewed under the heightened arbitrary and capricious standard. It is undisputed that the policy grants Reliance Standard discretionary authority to administer the plan and to determine eligibility benefits under the insurance policy. *See* Insurance Policy ¶ 8.0. The parties also do not dispute that Reliance Standard makes decisions on eligibility and is responsible for paying the benefits.

Applying the heightened arbitrary and capricious standard requires a determination of whether Reliance Standard's interpretation of the policy language was legally correct. *See Brown v. Blue Cross & Blue Shield of Ala., Inc.*, 898 F.2d at 1563–64; *Brown v. BellSouth Telecommunications, Inc.*, 73 F. Supp. 2d at 1319; *Stvartak v. Eastman Kodak Co.*, 945 F. Supp. 1532, 1534 (M.D. Fla. 1996). "It is fundamental that the fiduciary's interpretation first must be 'wrong' from the perspective of *de novo* review before a reviewing court is concerned with the self-interest of the fiduciary." *Brown v. Blue Cross & Blue Shield of Ala., Inc.*, 898 F.2d at 1566 n. 12. *See also Godfrey v. Bell South Telecommunciations, Inc.*, 89 F.3d 755, 757–58 (11th Cir. 1996); *Buce v. National Serv. Indus., Inc.*, 74 F. Supp. 2d 1272, 1276 (N.D. Ga. 1999). If Reliance Standard's interpretation is incorrect, Ms. Schreck must demonstrate that the plan administrator's conflict of interest is substantial. *See Lee v. Blue Cross/Blue Shield of Ala.*, 10 F.3d 1547, 1549–50 (11th Cir. 1994); *Brown v. BellSouth Telecommunications, Inc.*, 73 F. Supp. 2d at 1319. The burden then shifts to Reliance Standard to prove that its interpretation benefits all participants and

beneficiaries. *See Lee*, 10 F.3d at 1550. If Reliance Standard carries its burden, Ms. Schreck may still succeed if Reliance Standard's actions were arbitrary and capricious by other measures. *See Lee*, 10 F.3d at 1552; *Luton,* 2000 WL 310562, at *5.

In this case, it does not matter whether each party has fulfilled its respective burdens because Reliance Standard's decision was arbitrary and capricious for other reasons. A decision is arbitrary and capricious if it "was made in bad faith, not supported by substantial evidence, or is erroneous on a question of law." *Nelson v. Sun Life Assurance Co. of Canada*, 962 F. Supp. 1010, 1012 (W.D. Mich. 1997). *See also Clausen v. Standard Ins. Co.*, 961 F. Supp. 1446, 1455 (D. Colo. 1997). The arbitrary and capricious standard applies to both the examiner's legal conclusions and factual findings. *See Paramore v. Delta Airlines, Inc.*, 129 F.3d 1446, 1451 (11th Cir. 1997); *Lake v. Unum Life Ins. Co. of Am.*, 50 F. Supp. 2d 1243, 1257 (M.D. Ala. 1999). In this case, there was no reasonable basis for the decision to deny insurance benefits to Ms. Schreck based on the facts known to Reliance Standard at the time it made the decision. *See Lee*, 10 F.3d at 1550; *Stvartak*, 945 F. Supp. at 1534 (M.D. Fla. 1996). *See also Jett v. Blue Cross & Blue Shield of Ala., Inc.*, 890 F.2d 1137, 1140 (11th Cir. 1989) (holding that district court should consider only the information and materials available to the insurer at the time it denied claim to determine whether decision was arbitrary and capricious).

Whether Mr. Schreck's injuries were accidental or self-inflicted is a question of both fact and law. Courts first look to whether the insured subjectively expected to suffer injuries as a result of his acts. *See Wickman v. Northwestern Nat'l Ins. Co.*, 908 F.2d 1077, 1087–88 (1st Cir. 1990); *Schultz Metropolitian Life Ins. Co.*, 994 F. Supp. 1419, 1421 (M.D. Fla. 1997). Often "the actual expectation [of the insured] is difficult, if not impossible to determine." *Wickman*, 908 F.2d at 1087. If there is insufficient evidence to accurately determine the insured's subjective expectation, the administrator should then determine "whether a reasonable person, with background and characteristics similar to the insured, would have viewed the injury as highly likely to occur as a result of the insured's intentional conduct." *Id.* at 1088 (finding that insured reasonably should have expected serious injury when he climbed over guardrail and suspended himself with one hand high above railroad tracks). *See also Sims v. Monumental General Ins. Co.*, 960 F.2d 478, 480–81 (5th Cir. 1992) (finding that self-inflicted injury exclusion applied where death was a result of autoerotic asphyxiation even though insured did not intend to die); *Walker v. Metropolitan Life Ins. Co.*, 24

F. Supp. 2d 775, 780–81(E.D. Mich. 1997) (finding that administrator's determination that injuries were highly likely to occur as a result of decedent's drinking and driving was reasonable); *Schultz*, 994 F. Supp. at 1422 (same). *See also Santanella v. Metropolitan Life Ins. Co.*, 123 F.3d 456, 462–63 (7th Cir. 1997) (applying *Wickman* standard); *Lincoln Nat'l Life Ins. Co. v. Evans*, 943 F. Supp. 564, 570 (D. Md. 1996) (same).

Reliance Standard applied this standard and found that "Mr. Schreck should have known that serious bodily injury or death was a probable consequence of or was substantially likely to have occurred as result of opening a car door or stepping out of a moving vehicle." Yet neither the police report nor the medical examiner's report provide sufficient evidence to support a finding that Mr. Schreck intentionally left the car. Although the police report states that Mr. Schreck said that he wanted to get out of the car if his companions were going to a certain bar, it notes that Mr. Schreck "fell out" of the car and does not comment on whether anyone saw Mr. Schreck step from the car. The medical examiner's autopsy report concludes that the cause of death was "undetermined." Although the autopsy report states that Mr. Schreck leaped from the car, it does not appear that the medical examiner based this conclusion on his autopsy or any eyewitness statements. These facts, therefore, are not alone sufficient evidence for Reliance Standard to conclude that Mr. Schreck jumped from the car.

The police report does state that Mr. Schreck opened the door while the car was moving. Nevertheless, Reliance Standard's conclusion that such an act is highly likely to cause serious injury without investigating further into the circumstances surrounding Mr. Schreck's death was arbitrary and capricious. An insurance examiner has a duty to investigate matters essential to the denial of the insured's claim. *See Brown v. Blue Cross & Blue Shield of Ala.*, 898 F.2d at 1566 n. 11; *Quinn v. Blue Cross & Blue Shield Assoc.*, 990 F. Supp. 557, 562–63 (N.D. Ill. 1997).

> Good faith requires an honest effort to ascertain the facts upon which its exercise must rest and an honest determination from such ascertained facts. . . . [I]f the [administrator] knew of matters concerning which honesty would require investigation, and failed to act, . . . it cannot, in law, be regarded as having exercised good faith, and its action would be arbitrary.

*Brown v. Blue Cross & Blue Shield of Ala.*, 898 F.2d at 1566 n.11. *See Olson v. Troike*, 959 F. Supp. 847, 857–58 (N.D. Ill. 1997) (finding that insurer's mere speculation as to the cause of insured's accident was not sufficient without further factual inquiry). The documents relied on by Reliance

Standard provided only a cursory explanation of the cause of Mr. Schreck's death and left out several important details. For example, the speed of the car is an essential and material fact in determining whether a serious injury is a probable consequence of a person opening a moving car's door. Indeed, Richard Walsh, one of the claim examiners in this case, admitted that if the car were going as slow as one mile per hour, a serious injury may not have been a probable consequence. *See* Deposition of Richard Walsh [D.E. 43] at 49–50 (Jan. 7, 2000). Nevertheless, he never inquired as to how fast the car was moving at the time of Mr. Schreck's egress. *See id.* at 47. The police report, which notes that Mr. Schreck had sustained only a "laceration to the back of his head," gives no indication as to the car's speed when Mr. Schreck opened the door. In a case such as this, the circumstances surrounding the incident are crucial to determining whether Mr. Schreck's injuries were accidental or were self-inflicted. Nevertheless, Reliance Standard did not contact any of the witnesses about the incident, and its failure to make any effort to investigate further renders its decision arbitrary and capricious.

Reliance Standard relies on *Zuliskey v. Prudential Ins. Co. of Am.*, 48 A.2d 141, 143–43 (Pa. 1946), to support its argument that Mr. Schreck's injuries were not the result of an accident. Although *Zuliskey* involves facts similar to those in this case, it is not an ERISA case and therefore does not help in determining whether Reliance Standard adequately investigated Ms. Schreck's claim. *Zuliskey* was also based on extensive trial evidence, which included the fact that the car was traveling 25 miles per hour when the insured opened the door.

Ms. Schreck also argues that Reliance Standard should have further investigated the toxicology reports to determine whether Mr. Schreck's departure was accidental because he was too drunk to perceive the risk of injury. This argument does not hold merit. Even if Mr. Schreck was so drunk that he was unable to subjectively believe that he would be injured by getting out of the car while it was moving, the question is whether this belief was reasonable. As Reliance Standard points out, the majority of courts reject the argument that injuries in drunk driving cases should be classified as "accidental" simply because the insured was too drunk to be aware of the risk of drinking and driving. *See Schultz*, 994 F. Supp. at 1422 (holding that decision to deny benefits for injuries resulting from drinking and driving was not arbitrary and capricious because any expectation that a serious injury would not result was unreasonable); *Walker*, 24 F. Supp. 2d at 780–82 (same). *See also Morton v. Smith*, 91 F.3d 867, 869, 872 (7th Cir. 1996) (examiner's

decision that insured's acts were not accidental was not arbitrary and capricious where insured jumped off the roof of a bar while extremely intoxicated). *But see Buce v. National Serv. Indus., Inc.*, 74 F. Supp. 2d 1272, 1277–78 (N.D. Ga. 1999) (finding that insurer should have deemed a car wreck accidental and provided coverage where driver had blood alcohol level of .22%). Rather, as explained above, courts examine whether a reasonable person would have viewed an injury as highly likely to occur as a result of the insured's actions. Thus, the fact that Mr. Schreck may have been too drunk to know what he was doing does not automatically render opening the door in a moving car an accident under the policy.

Because Reliance Standard's decision was arbitrary and capricious this case is remanded to the administrator for further consideration and investigation of the material facts. On remand, Ms. Schreck can present additional evidence, even if subsequently obtained, in support of her claim. *See Shannon v. Jack Eckerd Corp.*, 113 F.3d 208, 210 (11th Cir. 1997) (affirming district court's ruling that insurer's reliance on conclusory determinations of third parties was arbitrary and capricious, and permitting insured to submit subsequently available evidence on remand); *Jett*, 890 F.2d at 1140 ("'Should [the beneficiary] wish to present additional information that might affect the determination of eligibility of benefits, the proper course [is] to remand to [the plan administrator] for a new determination.'").

Reliance Standard's motion for summary judgment [D.E. 22] is DENIED. This case is DISMISSED WITHOUT PREJUDICE and REMANDED to the administrator for reconsideration of Ms. Schreck's claim after further proceedings and appropriate investigation are conducted to determine the circumstances of Mr. Schreck's death. All pending motions are DENIED AS MOOT. This case is CLOSED.

DONE and ORDERED in chambers in Miami, Florida, this 29th day of June, 2000.

Adalberto Jordan
Adalberto Jordan
United States District Judge

Copy to: Gene D. Lipscher, Esq.
Joshua Bachrach, Esq.
Carl S. Karmin, Esq.